ROGOWSKI *v.* CITY OF DETROIT.

1. EVIDENCE—JUDICIAL NOTICE—FLUORIDIZED PUBLIC WATER.
The Supreme Court takes judicial notice of the fact that millions of people, including 2/3 of the 18 major cities, were drinking water containing supplemental fluoride and that 72 communities in this State were supplying approximately 1,250,000 people with water so supplemented.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence § 100.
[2, 12] 41 Am Jur, Pleading § 342.
[3] 16 Am Jur 2d, Constitutional Law § 259 *et seq.*
25 Am Jur, Health § 3.
[4] 16 Am Jur 2d, Constitutional Law § 274 *et seq.*
25 Am Jur, Health § 4.
[5, 6] 16 Am Jur 2d, Constitutional Law § 284 *et seq.*
[7, 9] 20 Am Jur, Evidence § 16 *et seq.*
[8, 10, 11] 16 Am Jur 2d, Constitutional Law § 281 *et seq.*
[13, 15] 56 Am Jur, Waterworks and Water Companies § 76.
[14] 37 Am Jur, Municipal Corporations § 102 *et seq.*
[16] 5 Am Jur 2d, Appeal and Error § 1009.

2. JUDGMENT—SUMMARY JUDGMENT—MATERIAL ISSUES OF FACT.

The mere existence of issues of fact is no bar to entry of summary judgment for defendants, if, upon resolving all such issues in favor of plaintiffs, the defendants would still be entitled to a judgment as a matter of law; it being necessary that there be material issues of fact presented in order to bar entry of summary judgment (GCR 1963, 117.2[1]).

3. CONSTITUTIONAL LAW—POLICE POWER—PUBLIC HEALTH.

The police power of a State must be held to embrace such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety.

4. SAME—PUBLIC HEALTH—LOCAL BODIES.

A State may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety.

5. SAME—LIBERTY OF THE INDIVIDUAL.

The liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.

6. SAME—PROTECTION OF PUBLIC.

The power of the public to guard itself against imminent danger does not depend in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under sanction of the State, for the purpose of protecting the public collectively against such danger.

7. EVIDENCE—COMMON KNOWLEDGE.

The court must know what everybody knows.

8. HEALTH—STATUTES—COMMON RELIEF.

A legislature, in choosing a method of protecting the public health or public safety, is not compelled to commit such a matter to the final decision of a court or jury, and where it does not do so, the legislature's choice is made law in the light of all the information it had or could obtain, notwithstanding that it may be the common belief of the mass of the people is not accepted universally.

9. EVIDENCE—COMMON BELIEF.

A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts.

10. HEALTH—STATUTES.

A legislative enactment based on the common belief of the people of the State that the public health would be protected thereby, is a reasonable and proper exercise of the police power, hence, neither a court nor a jury may disregard such legislation.

11. EVIDENCE—JUDICIAL NOTICE—COMMON BELIEF—FLUORIDATION—DENTAL CARIES—PUBLIC HEALTH.

A court may take judicial notice of the common knowledge or belief that fluoridation of public water supply is beneficial to prevent dental caries and so improve public health.

12. JUDGMENT—SUMMARY JUDGMENT—INJUNCTION—FLUORIDATION OF PUBLIC WATER SUPPLY—POLICE POWER.

Summary judgment for defendant was the proper disposition of suit to enjoin city from fluoridation of its public water supply, where claimed issues of fact were immaterial, being matters of opinion relating to the efficacy or effects of fluoridation not decisive of whether the police power was properly exercised within constitutional limitations (GCR 1963, 117-.2[1]).

13. HEALTH—PREVENTION OF DISEASE—DENTAL CARIES—FLUORIDATION OF PUBLIC WATER.

It is not essential to the adoption of a public health measure that the disease involved be an infectious or contagious one, hence, a duly adopted city ordinance to fluoridate public water supply to prevent dental caries was not an improper measure to protect and improve the public health.

14. MUNICIPAL CORPORATIONS—FLUORIDATION OF PUBLIC WATER.

A home-rule city is *held*, to have authority to adopt an ordinance providing for the fluoridation of the public water supply so as to prevent dental caries, pursuant to the Constitution, statutes, and its charter, such action being not in conflict with charter requirement for furnishing pure and wholesome water (Const 1908, art 8, §§ 20, 21; CL 1948 and CLS 1961, § 117.1 *et seq.*; Detroit Charter, title 3, ch 1, §§ 1, 12, title 4, ch 1, § 12, ch 12, §§ 1, 7).

15. HEALTH—FLUORIDATION OF PUBLIC WATER SUPPLY—PRACTICE OF MEDICINE OR DENTISTRY.

The fluoridation of the public water supply of a city for the purpose of preventing dental caries is not the practice of medicine or dentistry or treatment of children by health officers.

16. COSTS — PUBLIC QUESTION — MUNICIPAL CORPORATIONS — FLUOR-
IDATION OF WATER.

    No costs are allowed in class action to enjoin city from enforcing a water fluoridation ordinance, and to have it declared illegal and void, a public question being involved.

    Appeal from Wayne; Bowles (George E.), J. Submitted June 3, 1964. (Calendar No. 11, Docket No. 50,463.) Decided January 5, 1965.

    Bill by Frank Rogowski and others against City of Detroit, a municipal corporation, Common Council of City of Detroit, Board of Water Commissioners of City of Detroit, and Board of Health of City of Detroit to enjoin the fluoridation of the city's water. Michigan State Dental Association, a Michigan nonprofit corporation, and Detroit District Dental Society intervened as defendants. Summary judgment for defendants. Plaintiffs appeal. Affirmed.

    *Craig Thompson,* for plaintiffs.

    *Robert Reese,* Corporation Counsel, *John F. Hathaway* and *John D. O'Hair,* Assistant Corporation Counsel, for defendants.

    *Clark, Klein, Winter, Parsons & Prewitt (H. William Butler, Douglas E. Peck,* and *Lawrence M. Scoville, Jr.,* of counsel), for intervening defendants.

    DETHMERS, J. Plaintiffs are residents of Detroit and users of water supplied by it. They brought this chancery action to enjoin defendant city, its common council, board of water commissioners, and board of health from enforcing a water fluoridation ordinance, and to have it declared illegal and void. An order entered declaring this to be a class action, on behalf of all users of Detroit's public water supply who object to its fluoridation. The State Dental

Association and Detroit Dental Society were permitted to intervene as parties defendant. Defendants moved for summary judgment in their favor. Their motion was granted, the court holding the ordinance to be valid. Plaintiffs appeal.

The ordinance, as adopted by defendant city's common council, stated that it was adopted in furtherance of the city's policy, pursuant to its police power, to promote public health. It directed the defendant city board of water commissioners, in cooperation with the defendant city board of health, to institute fluoridation of the city's water supply.

Plaintiffs' bill of complaint challenges the validity of the ordinance on the following grounds: (1) that the council is given no authority to enact it either by State statute or the city charter and that it is violative of the latter; (2) that it violates a statute forbidding wholesale treatment of children by health officers, other than to control epidemics of infectious or contagious diseases, without written consent of their parents; (3) that its adoption does not come within the reasonable exercise of the city's police power and thus is unconstitutional because (a) no preponderance of evidence can be produced to prove that fluoridation of water actually reduces tooth decay, as claimed by defendants, (b) fluoridation harms the teeth of a substantial number of children, (c) fluoridation will not benefit adults, but large numbers of them may be physically harmed thereby; (4) that the ordinance purports to benefit public health but the improvement would be very slight, if any, it has no real or emergency relation to public health, and it invades the private rights of persons to choose for themselves what medications they will take; (5) that it is an attempt to subject people to scientific and medical experimentation without their consent; (6) that it is wasteful and uneconomic; (7) that the purported object of the ordinance could be

attained by other means not destructive of private rights.

Defendants filed answer denying the plaintiffs' allegations, above noted, as being without legal or factual basis or termed them unenlightened opinions and conclusions. They alleged in their answer that the ordinance was adopted to promote public health and that as such it was a lawful exercise of the police power; that fluoridation reduces dental caries in children, a common and widespread disease; that the overwhelming weight of scientific, medical, and dental opinion is that fluoridation of the public water supply reduces dental caries in children and benefits public health; and that this was the basis of the adoption of the ordinance, after the council had conducted hearings and heard evidence concerning the merits and demerits of fluoridation. The allegations of the complaint and of the answer conflict as to such merits and demerits.

Defendants moved for summary judgment on the ground that plaintiffs' complaint raised no genuine issue of any material fact to be litigated, but presented only expressions of opinions and questions of law for court determination. In support of the motion, defendants filed statements of public officials, indorsements by State councils and departments of health, and affidavits of scientific and medical authorities setting forth and acknowledging that fluoridation of public water supplies is beneficial to public health, that several thousand cities in the United States are fluoridating public water supplies and that millions of Americans are drinking such water and receiving the health benefits therefrom. Included among them were the following: Statement by John F. Kennedy, president of the United States; statement by Anthony J. Celebrezze, secretary, department of health, education and welfare; state-

ment by Arthur S. Flemming, secretary, department of health, education and welfare; statement by Dr. Luther L. Terry, surgeon general, public health service; statement by Robert F. Kennedy, attorney general of the United States; affidavit of Albert E. Heustis, M. D., Michigan State health commissioner; minutes of December 19, 1951, meeting of State council of health; minutes of October 15, 1952, meeting of State council of health; minutes of October 7, 1953, meeting of State council of health; minutes of October 27, 1959, meeting of State council of health; statement of policy re fluoridation of public water supplies, Michigan department of health, January, 1949; statement of policy re fluoridation of public water supplies, Michigan department of health, July, 1950; statement of policy re fluoridation of public water supplies, Michigan department of health, September, 1952; statement of policy re fluoridation of public water supplies, Michigan department of health, July, 1955; affidavit of Howard H. Mehaffey, D.D.S., in support of motion for summary judgment; affidavit of William Travis, D.D.S., in support of motion for summary judgment. In one of the said affidavits by a dentist, listed as public and private organizations that have indorsed fluoridation of public water supplies, are the following: public health service of the United States department of health, education and welfare, Michigan department of health, American Medical Association, American Dental Association, Michigan State Dental Association, Detroit District Dental Society, American Academy of Pediatrics, American Association of Public Health Dentists, American Public Health Association, Inter-Association Committee on Health (representing American Dental Association, American Hospital Association, American Medical Association, American Nurses Association, American Public Health Association, and the American Public

Welfare Association), Association of State and Territorial Dental Directors, Association of State and Territorial Health Officers, American Pharmaceutical Association, American School Health Association, and College of American Pathologists. In addition, it is a matter of fact, of which this Court may take judicial notice, that as of December 31, 1962, 43,750,878 people of 2,317 communities in the United States, including 12 of the 18 major cities, were drinking water containing supplemental fluoride. Of this total, 72 Michigan communities were supplying approximately 1,250,000 people with water containing a fluoride supplement.

It does not appear that plaintiffs filed any affidavits, depositions, or other types of proofs in opposition to the materials supporting defendants' motion. Plaintiffs say, however, that they should have been permitted to produce proofs, on trial, to show that (1) fluoridation of the water supply constitutes experimentation upon and treatment of the bodies of water users; (2) the object of the ordinance could be secured without violation of their rights; and (3) that harm to their bodies may result from such fluoridation. All of these bear on whether there was a constitutional exercise of the police power. This, then, projects the question of the propriety of disposition of the case by summary judgment without according plaintiffs an opportunity of a trial at which to advance such proofs.

Defendants' motion for summary judgment stated that it was planted on GCR 1963, 117.2(1) in that plaintiffs' complaint had failed to state a claim upon which relief could be granted, and, further, that plaintiffs' complaint attacked the constitutionality of the ordinance and the issues so raised presented only questions of law without raising any properly pleaded, genuine issue as to any material fact. The trial court's judgment stated that it was to be en-

tered because of plaintiffs' failure to state a claim upon which relief could be granted. Plaintiffs say, however, that issues of fact about fluoridation were. raised by the pleadings which entitled them to trial and determination thereof. In turn, defendants stress that what plaintiffs had to offer by way of testimony concerning fluoridation was not as to facts but opinions, expert and lay.

In *Whittenberg* v. *Carnegie,* 328 Mich 125, this Court said (p 126):

"The mere existence of issues of fact is, however, no bar to entry of summary judgment for defendants, if, upon resolving all such issues in favor of plaintiffs, the defendants would still be entitled to a judgment as a matter of law. *Jones* v. *Wayne Circuit Judge,* 253 Mich 515."

In *Davis* v. *Kramer Bros. Freight Lines, Inc.,* 373 Mich 594, we said, in affirming a summary judgment (p 597):

"We think appellants may have misconceived the issue: That disputed issues of fact arose by reason of certain claims of plaintiffs is undoubtedly true. The question, however, is whether those fact issues were material to the controlling legal principle and to the ground upon which summary judgment was granted."

Our inquiry must go, then, to whether there was an issue as to material facts, not just immaterial facts or opinions, and whether acceptance as true of all that plaintiffs say they could have proved under their pleadings would have entitled them to the injunctive relief sought or would have left defendants entitled still to a judgment as a matter of law. Preliminary to ascertaining whether there was an issue as to facts which were material, the question of their materiality must be resolved by consideration of precisely what it is that must be decided

in this case on the merits as to constitutionality of the ordinance.

With respect to the chief controversy herein, whether the ordinance is a reasonable and lawful exercise of the police power and hence constitutional, it is fortunate, for our guidance, that the Supreme Court of the United States has spoken in *Jacobson v. Massachusetts,* 197 US 11 (25 S Ct 358, 49 L ed 643). In that case a statute of Massachusetts was involved making it a criminal offense for a person over 21 years of age and not under guardianship to refuse to comply with a city board of health requirement to be vaccinated for smallpox at public expense. Defendant was on trial for refusing to comply, in violation of the statute. The prosecution contented itself with proof of the board's having required vaccination and having advised defendant thereof and defendant's noncompliance, but offered no other evidence. Defendant offered proofs purporting to show that vaccinations were injurious, had no relationship to public health and were not a scientifically accepted means of preventing smallpox. The trial court rejected defendant's offers of such proofs on the ground that they were immaterial. After conviction he appealed to the Massachusetts supreme judicial court, which affirmed, sustained the trial court's rulings on proffered proofs, and upheld the constitutionality of the statute and board action against the objections of the defendant, which were similar to those raised here. On appeal, the United States Supreme Court affirmed, quoting with approval from the opinion of the Massachusetts court, as follows (pp 23, 24):

" 'The other 11 propositions all relate to alleged injurious or dangerous effects of vaccination. The defendant "offered to prove and show by competent evidence" these so-called facts. Each of them, in its nature, is such that it cannot be stated as a truth,

otherwise than as a matter of opinion. The only "competent evidence" that could be presented to the court to prove these propositions was the testimony of experts, giving their opinions. * * * If the defendant had been permitted to introduce such expert testimony as he had in support of these several propositions, it could not have changed the result. It would not have justified the court in holding that the legislature had transcended its power in enacting this statute on their judgment of what the welfare of the people demands.' "

The United States Supreme Court went on to say, inter alia (pp 25, 26, 28–30):

"According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. * * * It is equally true that the State may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety. * * *

"The defendant insists that his liberty is invaded when the State subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person. But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members.

Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others. This court has more than once recognized it as a fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned.'
*   *   *

"The court would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the State, to protect the people at large, was arbitrary and not justified by the necessities of the case. *   *   * An American citizen, arriving at an American port on a vessel in which, during the voyage, there had been cases of yellow fever or Asiatic cholera, although apparently free from disease himself, may yet, in some circumstances, be held in quarantine against his will on board of such vessel or in a quarantine station, until it be ascertained by inspection, conducted with due diligence, that the danger of the spread of the disease among the community at large has disappeared. The liberty secured by the Fourteenth Amendment, this court has said, consists, in part, in the right of a person 'to live and work where he will,' *Allgeyer* v. *Louisiana,* 165 US 578 (17 S Ct 427, 41 L ed 832); and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country and risk the chance of being shot down in its defense. It is not, therefore, true.

that the power of the public to guard itself against imminent danger depends in every case involving the control of one's body upon his willingness to submit to reasonable regulations established by the constituted authorities, under the sanction of the State, for the purpose of protecting the public collectively against such danger.      *      *      *

"Looking at the propositions embodied in the defendant's rejected offers of proof it is clear that they are more formidable by their number than by their inherent value. Those offers in the main seem to have had no purpose except to state the general theory of those of the medical profession who attach little or no value to vaccination as a means of preventing the spread of smallpox or who think that vaccination causes other diseases of the body. What everybody knows the court must know, and therefore the State court judicially knew, as this court knows, that an opposite theory accords with the common belief and is maintained by high medical authority. We must assume that when the statute in question was passed, the legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them. It was not compelled to commit a matter involving the public health and safety to the final decision of a court or jury. It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain."

The United States Supreme Court quoted from *Viemeister* v. *White,* 179 NY 235, 239–241 (72 NE 97–99, 70 LRA 796), as follows (pp 34, 35):

" 'It must be conceded that some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventive of smallpox. The common belief, however, is that it has a decided tendency to prevent the

spread of this fearful disease and to render it less dangerous to those who contract it. While not accepted by all, it is accepted by the mass of the people, as well as by most members of the medical profession. It has been general in our State and in most civilized nations for generations. It is generally accepted in theory and generally applied in practice, both by the voluntary action of the people and in obedience to the command of law. Nearly every State of the Union has statutes to encourage, or directly or indirectly to require, vaccination, and this is true of most nations of Europe.   *   *   *

" 'A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts.   *   *   *

" 'The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country, where the government is by the people, through their chosen representatives, practical legislation admits of no other standard of action; for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the Constitution, and would sanction measures opposed to a republican form of government.

" 'While we do not decide and cannot decide that vaccination is a preventive of smallpox, we take judicial notice of the fact that this is the common belief of the people of the State, and with this fact as a foundation we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power.' "

The United States Supreme Court then said (pp 35, 37, 38):

"Since then vaccination, as a means of protecting a community against smallpox, finds strong support in the experience of this and other countries, no court, much less a jury, is justified in disregarding the action of the legislature simply because in its or their opinion that particular method was—perhaps or possibly—not the best either for children or adults.   *   *   *

"We are not prepared to hold that a minority, residing or remaining in any city or town where smallpox is prevalent, and enjoying the general protection afforded by an organized local government, may thus defy the will of its constituted authorities, acting in good faith for all, under the legislative sanction of the State. If such be the privilege of a minority then a like privilege would belong to each individual of the community, and the spectacle would be presented of the welfare and safety of an entire population being subordinated to the notions of a single individual who chooses to remain a part of that population. We are unwilling to hold it to be an element in the liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its local government, should have the power thus to dominate the majority when supported in their action by the authority of the State. While this court should guard with firmness every right appertaining to life, liberty or property as secured to the individual by the Supreme Law of the Land, it is of the last importance that it should not invade the domain of local authority except when it is plain-ly necessary to do so in order to enforce that law. The safety and the health of the people of Massachusetts are, in the first instance, for that Commonwealth to guard and protect. They are matters that do not ordinarily concern the National government. So far as they can be reached by any government,

they depend, primarily, upon such action as the
State in its wisdom may take; and we do not per-
ceive that this legislation has invaded any right se-
cured by the Federal Constitution."

From the above language of the United States
Supreme Court the rule clearly appears that the
court may take judicial notice of the common knowl-
edge or belief, as evidenced by the above listed pub-
lic statements, affidavits, and official actions, that
fluoridation is beneficial to prevent dental caries and
so improve public health. Further, that proofs of
the character which plaintiffs say they might have
adduced on trial could not have changed the re-
sults because a difference of opinion, whether ex-
pert or lay, as to the merits or demerits of fluorida-
tion with respect to public health presents a question
for legislative, not judicial, determination. It fol-
lows that this case could be and was properly dis-
posed of, as a question of law, by summary judgment.
This follows, as well, from the above cited Michigan
decisions because there was no issue of material or
controlling facts, the so-called factual disputes ac-
tually being matters of opinion, relating to the ef-
ficacy or effects of fluoridation. Hence, they could
not be decisive of whether the police power was
properly exercised within constitutional limitations.

The *Jacobson Case* fully answers plaintiffs' ques-
tions as to the constitutionality of the public health
measure.[1] It is true that the smallpox disease in-
volved in that case is infectious or contagious while
dental caries is not. Plaintiffs cite no cases to the
effect that that element is essential to the power of
the State to adopt and enforce regulations designed
to protect or improve public health. We conceive

---

[1] *Readey* v. *St. Louis County Water Co.* (Mo), 352 SW2d 622 (cer-
tiorari denied 371 US 8 [83 S Ct 20, 9 L ed 2d 47]), contains cita-
tions of a number of cases in the several States upholding the
constitutionality and validity of fluoridation measures. Plaintiffs
do not cite any to the contrary and we find none.

of no sound reason for so holding. To the contrary are: *Readey* v. *St. Louis County Water Co.* (Mo), 352 SW2d 622; *Dowell* v. *City of Tulsa* (Okla), 273 P2d 859; *Kraus* v. *Cleveland,* 163 Ohio St 559 (127 NE2d 609); *Kaul* v. *Chehalis,* 45 Wash 2d 616 (277 P2d 352); *Froncek* v. *Milwaukee,* 269 Wis 276 (69 NW2d 242); *Baer* v. *City of Bend,* 206 Ore 221 (292 P2d 134).

Michigan Constitution of 1908, art 8, § 20, in effect when the ordinance was adopted and when judgment entered herein, empowered and directed the legislature to provide by general law for the incorporation of cities. Section 21 provided that cities shall have power to adopt charters and to pass ordinances relating to municipal concerns. The legislature by PA 1909, No 279,[2] provided that each city charter shall provide for the public health. The people of Detroit adopted a charter under such authority. Title 3, ch 1, § 1, of the charter vests the legislative power of the city in a common council. Section 12 thereof provides that the permitted legislative powers include adoption of ordinances to promote public health and also to prescribe the duties of all city officers. Title 4, ch 1, § 12, provides that city officers shall have the duties prescribed by the council by ordinance. Title 4, ch 12, § 1, provides for a board of water commissioners and section 7 thereof provides that it shall have duties to be exercised in accordance with city ordinances, including supplying the city with sufficient pure and wholesome water. We think, contrary to plaintiffs' contentions, that these constitutional, statutory and charter provisions constitute adequate authority for enactment of the ordinance in question by the council. It does not conflict with the charter requirement for furnishing pure and wholesome water. 56 Am Jur, Water-

[2] See CL 1948 and CLS 1961, § 117.1 *et seq.* (Stat Ann 1949 Rev and Stat Ann 1961 Cum Supp 5.2071 *et seq.*).—Reporter.

works, § 75, pp 980, 981, and *Commonwealth* v. *Towanda Water Works,* 1 Monaghan (Pa) 500 (15 A 440).

*Dowell* v. *City of Tulsa, supra,* and *Kaul* v. *Chehalis, supra,* hold that fluoridation of the public water supply is not, as plaintiffs here contend, the practice of medicine or dentistry or treatment of children by health officers. We agree.

Judgment affirmed. No costs, a public question being involved.

KELLY, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred with DETHMERS, J.

KAVANAGH, C. J., and BLACK, J., concurred in result.