**Mary Ann WATSON, Appellant,**

v.

**KENTUCKY BOARD OF NURSING; and Commonwealth of Kentucky, Cabinet for Health Services, Appellees.**

**No. 1998–CA–002445–MR.**

Court of Appeals of Kentucky.

Sept. 22, 2000.

Discretionary Review Denied March 14, 2001.

---

J. Fox DeMoisey, Louisville, for Appellant.

Nathan Goldman, Kentucky Board of Nursing Louisville, Ellen M. Hesen, John H. Walker, Cabinet for Health Services Frankfort, for Appellees.

Before: GUDGEL, Chief Judge; EMBERTON and TACKETT, Judges.

## OPINION

EMBERTON, Judge.

In April 1997, the Kentucky Board of Nursing brought this action against Mary Ann Watson alleging that she was practicing nursing without a license.[1] In response, Watson admitted she has not obtained a nurse's license but nonetheless does offer lay-midwifery services. The Cabinet for Health Services was joined as

---

1. The complaint was originally filed with the Kentucky Board of Medicine by Watson's ex-husband with whom she was involved in a child custody dispute. The Board ruled it had no jurisdiction pursuant to KRS 311.550(11) and referred the case to the Kentucky Board of Nursing. KRS 311.550(11) expressly excludes the practice of midwifery from the practice of medicine.

a third-party plaintiff. The trial court issued an injunction prohibiting Watson from performing lay-midwifery until she complied with the applicable regulations. This appeal followed.[2]

Kentucky Revised Statutes (KRS) 211.180(1)(f), provides that the Cabinet shall:

... enforce the administrative regulations promulgated by the secretary of the Cabinet for Health Services for the regulation and control of the matters set out below and shall formulate, promote, establish, and execute policies, plans, and programs relating to all matters of public health, including but not limited to the following matters:

. . . .

(f) The practice of midwifery, including the issuance of permits to and supervision of women who practice midwifery. . . .

In April 1975, the Cabinet promulgated 902 KAR 4:010 which provides in part:

Section 1. Practice of Lay-midwifery Defined. The practice of lay-midwifery means assistance, or offer of assistance, rendered by a person, other than a physician or nurse-midwife, to a woman in normal childbirth, without using any instrument or artificial, forcible or mechanical means and without performing or attempting to perform any version of removing or attempting to remove adherent placenta and without prescribing, using or advising, the use of any drug except silver nitrate for the eyes of the newborn.

Section 2. Practice of Lay-midwifery without Permit Prohibited. A person shall not engage or attempt to engage in the practice of lay-midwifery within the state, unless he holds a valid and effective permit issued as herein provided.

Section 3. Lay-midwife Permits. New applications to practice lay-midwifery in the State of Kentucky shall not be accepted after April 9, 1975. Provided, however, that persons who have actively engaged in the practice of lay-midwifery in this state for a period of one (1) year prior to April 9, 1975 and who hold a valid and effective permit issued by the former Department of Health may, upon furnishing proof thereof, be entitled to renewal of their existing permit upon recommendation of the local board of health certifying the need for such services.

. . . .

Section 5. Permit Renewals. Lay-midwife permits issued under this administrative regulation shall expire on December 31 of each year, but may be renewed upon recommendation of the local health department where the midwife practices and upon certification of the local health department that a need for such services exists.

Although under the regulation those who practiced lay-midwifery before 1975 were permitted to continue, no new permits were issued after April 1975. Watson was not able to obtain a permit since she was not practicing before 1975, nor did she meet the regulatory requirements. In 1986, the Cabinet promulgated 902 KAR 4:015, entitled Nurse Midwifery, effectively eliminating nurse midwifery and decreeing that no new permits would be issued to anyone but Advanced Registered Nurse Practitioners.

Historically, often because of geographic distances from medical assistance, women have employed the help of birth attendants who, although not professionally trained, were believed to have skill in assisting deliveries. With the growth in the number of professional nurses, the medical advancements made in the area of childbirth, and concern over the safety of mothers and children, there became a movement to regulate the practice of midwifery. Across

---

**2.** The trial court did not reach the issue of whether the Board of Nursing has jurisdiction over Watson, who is not a nurse. Because we affirm the trial court's decision, we likewise do not discuss the issue.

the country, legislatures enacted restrictions and licensing requirements for the purpose of protecting the public health and safety.[3]

Pursuant to KRS 211.180, our legislature granted the Cabinet broad discretion in its control of the practice of midwifery. Clearly, such broad grants of power to administrative agencies in the area of public health have been generally upheld. As stated in *Adams, Inc. v. Louisville & Jefferson County Board of Health:* [4]

There is perhaps no broader field of police power than that of public health. The fact that its exercise impinges upon private interests does not restrict reasonable regulation.

The power to promote and safeguard the public health is of paramount importance and the power of the legislature to delegate authority to agencies with the expertise to further that interest was recognized in *Graybeal v. McNevin,*[5] where the court upheld the authority of the State Board of Health to require fluoridation of water supplies under KRS 211.090 and 211.180. In doing so, it recited the general rule in regard to judicial review of administrative rules and regulations:

In general, in the absence of valid statutory provisions or other factors affecting the scope and extent of judicial review, administrative determinations will not be interfered with by the courts unless, but will be interfered with where, the determination is beyond the power which could constitutionally be vested in or exercised by an administrative authority; the determination is without or in excess of the statutory powers and jurisdiction of the administrative authority, the determination is an exercise of power so arbitrary or unreasonable as virtually to transcend the authority conferred, or is otherwise an abuse of discretion, or is in disregard of the fundamental rules of due process of law, as required by constitutional or statutory directions made.[6]

And, it added that the general rule may not apply with equal force where the promulgating agency is composed of specialists in an area of public health concerns. "It may be that an arbitrary exercise of power could be restrained but it would have to be palpable so to justify a court in interfering with so salutary power and one so necessary to the public health." [7]

There is no dispute that the practice of midwifery is a public health concern and that the state is within its police power to regulate its practice.[8] The legislature through KRS 211.180(1)(f) delegated such power to the Cabinet. The requirement that a midwife in this state be licensed, and to obtain that license must be a nurse, is rationally related to the objective of promoting the health of the woman and the infant assisted. The regulation is not an invalid exercise of the authority conferred upon the Cabinet.[9]

Watson contends that if lay-midwifery is to be eliminated, it must be by the legislature, not by the Cabinet, that is to say not by the Executive Branch. As a general proposition, the General Assembly cannot delegate its power to make a law.[10] Admittedly, the practical effect of the reg-

3. For a discussion of the history of midwifery and a comparison of the states regulatory schemes see *Midwifery in America: The Need for Uniform and Modernized State Law,* 20 Suffolk U.L.Rev. 1178 (1986).

4. Ky., 439 S.W.2d 586, 589 (1969).

5. Ky., 439 S.W.2d 323 (1969).

6. *Id.* at 326 (quoting 42 Am.Jur., Public Administrative Law, § 209).

7. *Id.*

8. *Markendorf v. Friedman,* 280 Ky. 484, 133 S.W.2d 516 (1939).

9. *Graybeal, supra.*

10. *Legislative Research Com'n v. Brown,* Ky., 664 S.W.2d 907 (1984).

ulation is to render it impossible to practice lay midwifery; it does not, however, prohibit midwifery and mandates only certain prerequisites to obtaining a license. Accordingly, we find that the authority conferred upon the Cabinet is not an unlawful delegation of power.

The judgment is affirmed.

ALL CONCUR.